UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.:

_____
                                        )
ROGER SIMON                             )
                                        )
        Plaintiff                       )
                                        )
v.                                      )
                                        )
HARVARD VANGUARD MEDICAL                )
ASSOCIATES, INC., and                   )
ATRIUS HEALTH, INC.                     )
                                        )
        Defendants                      )
_____)

## COMPLAINT AND JURY CLAIM

NOW COMES Roger Simon, the plaintiff in the above-entitled action, and hereby states as follows:

1.      This is a civil rights action in part based on unlawful discrimination on the basis of disability, race, national origin, and retaliation by an employer against its employee.

2.      The unlawful disability discrimination and retaliation was perpetrated by the defendant employers against their employee, the plaintiff, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq. ("ADA") and in violation of M.G.L. Chapter 151B, Section 1, et seq.

3.      The unlawful race and national origin discrimination and retaliation was perpetrated by the defendant employers against their employee, the plaintiff, in violation of the Civil Rights Act, 42 U.S.C. 2000e, et seq., and in violation of M.G.L. Chapter 151B, §1, et seq.

4.      The unlawful practices were committed in the Federal District of Massachusetts, this Court's judicial district.

5.      This Court has jurisdiction of this matter pursuant to the provisions of 42 U.S.C. 2000e-5(f)(3), 42 U.S.C. 12117. and 28 U.S.C.  1331.

6.      Plaintiff has asserted claims and requests for relief pursuant to Massachusetts law that arise from the same facts and circumstances as Plaintiff's claims and requests for relief pursuant to Federal law.

7.      The Court has Supplemental Jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. 1367.

8.      The unlawful practices were committed in the Federal District of Massachusetts, this Court's judicial district.

## PARTIES

9.      The Plaintiff in this action is Roger Simon (hereinafter referred to as "the plaintiff or Mr. Simon"), an individual now or formerly residing at 7301 Avalon Drive, Randolph, Massachusetts.

10.     Defendant Harvard Vanguard Medical Associates, Inc. is non-profit corporation organized and/or authorized to do business under the laws of the Commonwealth of Massachusetts, and is an employer as defined by 42 U.S.C. 2000e, by 42 U.S.C. 12101, et seq. and Massachusetts General Laws Chapter 151B, Section 1, now or formerly having a usual places of business throughout Massachusetts and a principal office at 275 Grove Street, Newton, Massachusetts.

11.     Defendant Atrius Health Inc. is non-profit corporation organized and/or authorized to do business under the laws of the Commonwealth of Massachusetts, and is an employer as defined by 42 U.S.C. 2000e, by 42 U.S.C. 12101, et seq. and Massachusetts General Laws Chapter

151B, Section 1, now or formerly having a usual places of business throughout Massachusetts and a principal office at 275 Grove Street, Newton, Massachusetts

12.    Throughout this Complaint, the plaintiff will refer to both defendants, Harvard Vanguard Medical Associates, Inc. and Atrius Health, Inc., jointly as "HVMA" and/or as the "defendants."

13.    HVMA owns and operates medical facilities.

14.    At all times relevant to this Complaint, HVMA and each defendant separately, had more than twenty employees.

15.    At all times relevant to this Complaint, Mr. Simon was an employee of HVMA.

FACTS COMMON TO ALL COUNTS

16.    At all times during his employment with HVMA, Mr. Simon was qualified for the position of Clinical Safety & Risk Management Specialist, the position he held with HVMA.

17.    Mr. Simon is a black man of Haitian origin.

18.    As a black man of Haitian origin, Mr. Simon is a member of the protected classes of 42 U.S.C. 2000e, and M.G.L. Chapter 151B.

19.    Mr. Simon has been diagnosed with Attention Deficit Hyperactivity Disorder, or "ADHD".

20.    As an individual with ADHD, Mr. Simon is eligible for protection against disability discrimination under the ADA and M.G.L. Chapter 151B.

21.    At all times relevant to this Complaint, HVMA had an obligation and duty to provide Mr. Simon with a work place free from discrimination.

22.    Mr. Simon became an employee of HVMA's on or about November 8, 2011 in the position of Clinical Safety & Risk Management Specialist.

23.    HVMA terminated Mr. Simon's employment on February 22, 2013..

24.     In the early part of his employment in early 2013, and again in May, 2012, Mr. Simon informed HVMA's management of his ADHD diagnosis.

25.     ADHD substantially impairs several of Mr. Simon's major life activities, including but not limited to his ability to concentrate, to organize his thoughts clearly, to manage his executive functions, and to learn.

26.     As such, Mr. Simon is a qualified disabled person, and is a member of the protected classes of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.

27.     As such, Mr. Simon is a qualified handicapped person, and is a member of the protected classes of Massachusetts General Laws Chapter 151B Section 1, et seq.

28.     Throughout his employment, HVMA treated Mr. Simon different from his similarly situated coworkers due to his race, national origin, and disability, then terminated his employment on February 22, 2013 due to his race, national origin, disability and in retaliation for reporting that he was being treated differently due to my disability.

29.     HVMA employed two individuals in the same position as Mr. Simon (Clinical Safety & Risk Management Specialist), both of whom were Caucasian, and not disabled.

30.     HVMA treated similarly situated employees such as the other two Clinical Safety & Risk Management Specialists significantly more favorably than it treated Mr. Simon.

31.      As part of the duties of Clinical Safety & Risk Management Specialist, Mr. Simon and his two peers were required to make presentations to various medical professionals at a variety of HVMA's facilities around Massachusetts.

32.     The Clinical Safety & Risk Management Specialist's presentations were designed to inform the medical professionals to promote safety of patients, and a culture of self reporting.

33.     HVMA required Mr. Simon to make "dry run" presentations to his supervisors prior to making the actual presentations to the medical facilities.

34.     HVMA did not impose such a 'dry run' requirement of Mr. Simon's two similarly situated coworkers/peers.

35.     In May of 2012, Mr. Simon informed his direct supervisor, Dr. Beverly Loudin, of his ADHD diagnosis.

36.     At the time Mr. Simon informed Dr. Loudin of his ADHD diagnosis, he requested that he be permitted to help improve the structure of HVMA's calendar system.

37.     The recommendations Mr. Simon made to Ms. Loudin regarding HVMA's calendar system would have helped Mr. Simon with some of the impairments caused by ADHD.

38.     For example, Mr. Simon recommended that HVMA's Microsoft Outlook calendars and "invite" systems between Atrius's various medical facilities/organizations be synched. which would avoided the need to maintain numerous separate calendars.

39.     HVMA never followed up on implementing Mr. Simon's recommendation relative to synching the calendar systems.

40.     HVMA failed to offer any other reasonable accommodation to Mr. Simon to improve the challenges (caused by ADHD) he was experiencing with HVMA's calendar system.

41.     HVMA failed to engage in any interactive dialogue with Mr. Simon to determine if there was any accommodation it could offer to improve the challenges (caused by ADHD) he was experiencing with HVMA's calendar system.

42.     In or around May, 2012, Dr. Loudin set up a meeting with Mr. Simon and Norm Finkelstein in HVMA's Human Resources office regarding Mr. Simon's disclosure of his ADHD diagnosis.

43.     During the meeting with Human Resources, HVMA asked Mr. Simon for documentation of his diagnosis.

44.     Mr. Simon provided HVMA with his doctor's report regarding his disability and requested accommodations, which included a request to work from home one day per week to allow Mr. Simon to work on his report generation in a quiet, uninterrupted setting.

45.     HVMA denied the accommodation to work from home one day per week requested by Mr. Simon and his doctor.

46.     Rather than grant his accommodation request to work from home one day per week, HVMA moved Mr. Simon's desk away from his two co workers.

47.     The move to Mr. Simon's new work space did not help Mr. Simon to work quietly, as it was just as noisy and with the same interruptions as with his old work space.

48.     Instead, the move resulted in isolation from Mr. Simon's peers and coworkers and a corresponding loss of camaraderie and morale.

49.     HVMA further singled Mr. Simon out by requiring that my supervisor, Dr. Loudin or project Manager Ailish Wilkie, attend his presentations.

50.     HVMA did not impose the requirement of a supervisor's presence at presentations on Mr. Simon's two similarly situated, non protected class peers.

51.     HVMA's requirement of a supervisor's presence at Mr. Simon's presentations wreaked havoc on his schedule, as he was then required to coordinate his schedule not only with the facilities, but also with either Dr. Loudin's or Ms. Wilkie's schedules.

52.     HVMA's requirement of a supervisor's presence at Mr. Simon's presentations also affected Mr. Simon's credibility with the medical professionals at the various facilities, who viewed him as inexperienced or not as knowledgeable on the topics on which he presented.

53.     HVMA further singled Mr. Simon out by criticizing him for having open safety event files.

54.     All three of the Clinical Safety & Risk Management Specialists always had open files; yet, HVMA did not criticize or issue discipline to Mr. Simon's two similarly situated, non protected class peers.

55.     HVMA also singled Mr. Simon out for random audits.

56.     In June 2012, HVMA announced that it would be conducting random audits of the Clinical Safety & Risk Management Specialists' files.

57.     HVMA audited a far greater number of Mr. Simon's files than those of his two similarly situated, non protected class peers.

58.     As of October or November 2012, HVMA stopped auditing the files of Mr. Simon's two similarly situated, non protected class peers, but continued to audit Mr. Simon's files.

59.     In December, 2012, Mr. Simon approached Dr. Loudin about the difference in treatment between him and his two similarly situated, non protected class peers.

60.     Mr. Simon told Dr. Loudin that he felt he was being treated differently due to his disability, in that he was being forced to perform "dry runs" and was required to have her or Ms. Wilkie present during his presentations while his two similarly situated, non protected class peers had neither requirement.

61.     Dr. Loudin asked Mr. Simon if he felt there was bias in the workplace; Mr. Simon answered yes, after which Dr. Loudin became defensive and denied any difference in treatment.

62.     Shortly after his report/discussion with Dr. Loudin about differences in treatment and discrimination, in late December, Dr. Loudin emailed Mr. Simon to schedule a time to discuss his work performance.

63.     Mr. Simon met with Dr. Loudin and Mr. Finkelstein from Human Resources during which he was placed on a Performance Improvement Plan ("PIP").

64.     In addition to four elements of the PIP, HVMA set Mr. Simon up with a coach and independent reviewer, who was an experienced presenter.

65.     Mr. Simon worked with the independent reviewer, who provided him with very positive feedback on his presentation skills.

66.     The independent reviewer attended Mr. Simon's presentation at the HVMA Copley site on January 25, 2013, as did Ailish Wilkie.

67.     The independent reviewer's feedback was positive; however, Ms. Wilkie's feedback was negative.

68.     In February, 2013, Mr. Simon made a presentation at HVMA's Boston Post Office Square facility, where he received very good feedback from the administrators who Dr. Loudin asked to rate my performance; however, Ms. Wilkie had a very different (negative) perspective of the quality of my presentation.

69.     On February 13, 2013, Mr. Finkelstein in Human Resources asked Mr. Simon to take some time off, as they reviewed the PIP.

70.     Mr. Simon was then called in to meet with Mr. Finkelstein and the Director of Human Resources, during which he was informed of HVMA's termination of his employment.

71.     HVMA offered Mr. Simon a severance package, which he declined.

72.     At all times herein relevant, HVMA had the duty to provide its employees, including Mr. Simon, with an equitable, non-discriminatory work environment.

73.     HVMA is unable to articulate a legitimate, non-pretextual, non-discriminatory reason for its adverse actions against and termination of Mr. Simon's employment.

74.     HVMA's articulated reasons for its adverse action and termination including but not limited to unsatisfactory performance, are false and a pretext for discrimination against Mr. Simon because of his disability, race and national origin, and in retaliation for his May 2012 disclosure of his diagnosis and request for accommodations, and his December, 2012 report/discussion of discrimination.

75.     HVMA failed to provide reasonable accommodations to Mr. Simon for his disability, which failure resulted in HVMA's termination of Mr. Simon's employment.

76.     On or about July 10, 2013, Mr. Simon filed a Complaint and Charge of Discrimination against HVMA with the Massachusetts Commission Against Discrimination (the "MCAD"), which was duly cross-filed with the Equal Employment Opportunity Commission (the "EEOC".)

77.     In the Complaint filed with the MCAD and cross-filed with the EEOC, Mr. Simon alleged that HVMA discriminated against him on the basis of his disability, failure to accommodate his disability, and on the basis of his race and national origin and retaliation.

78.     Pursuant to its work-sharing agreement with the EEOC, the MCAD notified HVMA of Mr. Simon's complaint of discrimination, investigated the complaint, and provided HVMA with an opportunity to conciliate the matters.

## COUNT I - RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF TITLE VII, THE CIVIL RIGHTS ACT

79.     Plaintiff restates, realleges and incorporates by reference herein allegations one through seventy-eight of this Complaint.

80.     HVMA unlawfully discriminated against the plaintiff because of and on account of his race and national origin in violation of Title VII, the Civil Rights Act, 42 U.S.C. 2000e, et seq., as amended.

81.      As a direct and proximate result of HVMA's unlawful discrimination, in violation of the Title VII, the Civil Rights Act, 42 U.S.C. 2000e, et seq., as amended, the plaintiff has suffered substantial damage to his reputation, opportunity for advancement and standing in the trade, industry and business community in which he is a part, has sustained losses of future wages, earnings, earning capacity, salary and fringe benefits, and has suffered emotional distress and anguish of mind, and has suffered, and will continue to suffer, other damages as he will show at trial.

82.     Plaintiff complied with the requirement(s) of 42 U.S.C. 2000e-5(e)(1) when he properly and in a timely manner filed a complaint with the MCAD, said Complaint which was cross-filed with the EEOC, said complaint alleging that HVMA subjected him to unlawful discrimination.

        WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against HVMA and:

   a.  Declare that HVMA's conduct violated Title VII, the Civil Rights Act, 42 U.S.C. 2000e, et seq.;

   b.  Enjoin HVMA from subjecting the plaintiff to further discrimination and/or retaliation;

   c.  Issue a mandatory injunction compelling HVMA to provide training to its employees, officers and agents, designed to eliminate, prevent and reduce discrimination;

    d.   Award Plaintiff compensatory damages;

    e.   Award Plaintiff punitive damages;

    f.   Award Plaintiff reasonable attorneys' fees, statutory interest, and the costs of this action;

    g.   Issue such other relief as the Court deems just and proper.

## COUNT II – RACE AND NATIONAL ORIGIN DISCRIMINATION IN VIOLATION OF M.G.L. CHAPTER 151B, SECTION 4

83.    Plaintiff restates, realleges and incorporates by reference herein allegations one through eighty-two of this Complaint.

84.    HVMA unlawfully discriminated against the plaintiff because of and on account of his race and national origin in violation of Massachusetts General Laws Chapter 151B, Section 4.

85.    As a direct and proximate result of HVMA's unlawful retaliation in violation of M.G.L. Chapter 151B, Section 4, the plaintiff has suffered substantial damage to his reputation, opportunity for advancement and standing in the trade, industry and business community in which he is a part, has sustained losses of future wages, earnings, earning capacity, salary and fringe benefits, and has suffered emotional distress and anguish of mind, and has suffered, and will continue to suffer, other damages as he will show at trial.

86.    Plaintiff complied with the requirement(s) of Massachusetts General Laws Chapter 151B, Section 5 when he properly and in a timely manner filed a complaint with the MCAD, said complaint alleging that HVMA subjected him to unlawful discrimination.

87.    More than ninety days have passed since Plaintiff filed a Complaint with the MCAD.

88.    The MCAD has authorized the plaintiff to bring this private cause of action.

89.    Massachusetts General Laws Chapter 151B, Section 9 authorizes Plaintiff to bring this private civil action against HVMA.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against HVMA and:

a. Declare that HVMA's conduct violated Massachusetts General Laws Chapter 151B, Section 4, as amended;

b. Enjoin HVMA from subjecting the plaintiff to discrimination and/or retaliation;

c. Issue a mandatory injunction compelling HVMA to provide training to its agents, employees and officers designed to eliminate, prevent and reduce discrimination and retaliation;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive damages;

f. Award Plaintiff reasonable attorneys' fees, statutory interest, and the costs of this action;

g. Issue such other relief as the Court deems just and proper.

90.     Plaintiff restates, realleges and incorporates by reference herein allegations one through fifty-eight of this Complaint.

91.     The defendant's conduct, as alleged in allegations one through fifty-eight of Plaintiff's Complaint, constitutes unlawful disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.

92.     As a direct and proximate result of the defendant's unlawful disability discrimination, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq., Plaintiff, Roger Simon, has incurred and continues to incur substantial loss of wages, earning capacity and fringe benefits, has suffered emotional distress and anguish of mind, and has suffered, and will continue to suffer, other damages as he will show at trial.

93.     Plaintiff complied with the requirement(s) of 42 U.S.C. 12101, et seq. and 42 U.S.C.

2000e-5(e)(1) when he properly and in a timely manner filed a complaint with the Massachusetts

Commission Against Discrimination, said Complaint which was cross-filed with the Equal

Employment Opportunities Commission, said complaint alleging that the defendant terminated

his employment because and on account of his disability and otherwise subjected him to

unlawful disability discrimination.

94.     Plaintiff has duly, properly and in a timely manner notified the Equal Employment

Opportunities Commission of his intention to file this Complaint and to seek relief in this Court.

95.     The Equal Employment Opportunities Commission has issued Plaintiff a Notice of his

Right to Sue that authorizes Plaintiff to bring this private civil action against these Defendants.

        WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against the

defendant and:

a.      Declare that the defendant's conduct violated the Americans with Disabilities Act, 42

U.S.C. 12101, et seq.;

b.      Order that the defendant reinstate the plaintiff;

c.      Enjoin the defendant from subjecting Plaintiff to further disability discrimination;

d.      Issue a mandatory injunction compelling the defendant to provide training to its

employees, officers and agents, designed to eliminate, prevent and reduce disability

discrimination;

e.      Award Plaintiff compensatory damages;

f.      Award Plaintiff multiple damages;

g.      Award Plaintiff punitive damages;

h.      Award Plaintiff reasonable attorneys' fees, statutory interest, and the costs of this action;

and

i.      Issue such other relief as the Court deems just and proper.

## COUNT III – DISABILITY DISCRIMINATION, FAILURE TO ACCOMMODATE, AND RETALIATION IN VIOLATION OF 42 U.S.C. 12101, et seq.

96.     Plaintiff restates, realleges and incorporates by reference herein allegations one through ninety-five of this Complaint.

97.     Defendants' conduct, as alleged in allegations one through ninety-five of Plaintiff's Complaint, constitutes unlawful disability discrimination and retaliation, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq.

98.     As a direct and proximate result of Defendants' unlawful disability discrimination and retaliation, in violation of the Americans with Disabilities Act, 42 U.S.C. 12101, et seq., the plaintiff, Roger Simon, has incurred and continues to incur substantial loss of wages, earning capacity and fringe benefits, has suffered emotional distress and anguish of mind, and has suffered, and will continue to suffer, other damages as he will show at trial.

99.     Plaintiff complied with the requirement(s) of 42 U.S.C. 12101, et seq. and 42 U.S.C. 2000e-5(e)(1) when she properly and in a timely manner filed a complaint with the Massachusetts Commission Against Discrimination, said Complaint which was cross-filed with the Equal Employment Opportunities Commission, said complaint alleging that Defendants terminated his employment because and on account of his disability and otherwise subjected him to unlawful disability discrimination.

100.    Plaintiff has duly, properly and in a timely manner notified the Equal Employment Opportunities Commission of his intention to file this Complaint and to seek relief in this Court.

101.    The Equal Employment Opportunities Commission has issued Plaintiff a Notice of his

Right To Sue that authorizes Plaintiff to bring this private civil action against these Defendants.

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against

Defendant and:

j.      Declare that this Defendants' conduct violated the Americans with Disabilities Act, 42

U.S.C. 12101, et seq.;

k.      Enjoin this Defendants from subjecting Plaintiff to further disability discrimination;

l.      Issue a mandatory injunction compelling Defendant to provide training to its employees,

officers and agents, designed to eliminate, prevent and reduce disability discrimination;

m.      Award Plaintiff compensatory damages;

n.      Award Plaintiff multiple damages;

o.      Award Plaintiff punitive damages;

p.      Award Plaintiff reasonable attorneys' fees, statutory interest, and the costs of this action;

and

Issue such other relief as the Court deems just and proper.

## COUNT IV – DISABILITY DISCRIMINATION. FAILURE TO ACCOMMODATE AND RETALIATION IN VIOLATION OF M.G.L. CHAPTER 151B, SECTION 4

102.    Plaintiff restates, realleges and incorporates by reference herein allegations one through

one hundred one of this Complaint.

103.    The defendant's conduct, as alleged in allegations one through one hundred one of

Plaintiff's Complaint, constitutes unlawful disability discrimination and retaliation, in violation

of Massachusetts General Laws Chapter 151B, Section 4.

15

104.     As a direct and proximate result of the defendant's unlawful disability discrimination and retaliation, in violation of M.G.L. Chapter 151B, Section 4, Plaintiff, Roger Simon, has incurred and continues to incur substantial loss of wages, earning capacity and fringe benefits, has suffered emotional distress and anguish of mind, and has suffered, and will continue to suffer, other damages as he will show at trial.

105.     Plaintiff complied with the requirement(s) of Massachusetts General Laws Chapter 151B, Section 5 when he properly and in a timely manner filed a complaint with the Massachusetts Commission Against Discrimination, said complaint alleging that the defendant terminated his employment because and on account of his disability and otherwise subjected him to disability in the context of his employment.

106.     More than ninety days have passed since Plaintiff filed a Complaint of disability discrimination with the Massachusetts Commission Against Discrimination.

107.     Massachusetts General Laws Chapter 151B, Section 9 authorizes Plaintiff to bring this private civil action against the defendant.

         WHEREFORE, Plaintiff requests that this Honorable Court enter judgment against the defendant and:

a.       Declare that the defendant's conduct violated Massachusetts General Laws Chapter 151B, Section 4, as amended;

b.       Order that the defendant reinstate the plaintiff;

c.       Enjoin the defendant from subjecting Plaintiff to disability discrimination;

d.       Issue a mandatory injunction compelling the defendant to provide training to their agents, employees and officers designed to eliminate, prevent and reduce disability discrimination;

e.       Award Plaintiff compensatory damages;

f.      Award Plaintiff multiple damages;

g.      Award Plaintiff punitive damages;

h.      Award Plaintiff reasonable attorneys' fees, statutory interest, and the costs of this action;

and

i.      Issue such other relief as the Court deems just and proper.


**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**


Respectfully submitted,
For the plaintiff,


/s/      Sol J. Cohen
Sol J. Cohen
BBO # 630776
COHEN & SALES, LLC
221 Crescent Street, Suite 206
Waltham, MA 02453
(617) 621-1151
e-mail: soljcohen@cohenandsales.com